# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF VIRGINIA

## HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

**MAR 3 0 2026**

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

**BRADLEY GARRISON,**
Plaintiff,

v.

**CITY OF HARRISONBURG, VIRGINIA;**
**KELLEY WARNER, Chief of Police, in her official capacity;**
**THOMAS HARTMAN, Director of Public Works, in his official capacity;**
**JOHN DOES 1–10,**

Defendants.

5:26cv00043

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Bradley Garrison brings this civil rights action pursuant to **42 U.S.C. §1983** for violations of the **Fourth and Fourteenth Amendments** to the United States Constitution.

---

## I. INTRODUCTION

1. This case challenges the constitutionality of the City of Harrisonburg's automated speed-camera enforcement program.
2. The City has installed automated surveillance cameras that continuously monitor public roadways and generate civil citations based solely on machine-captured images and algorithmic processing.
3. The system operates without a law-enforcement officer observing the alleged violation.
4. The program imposes monetary penalties through automated enforcement and presumes that the **registered owner of a vehicle committed the violation.**

5. The City implemented the program pursuant to **Virginia Code §46.2-882.1**, which authorizes automated speed monitoring in work zones and school crossing zones.
6. Since implementation, the City has issued **tens of thousands of automated citations**.
7. These citations generate substantial revenue for the City while subjecting residents to constant automated surveillance.
8. The program violates the **Fourth Amendment's prohibition on unreasonable searches** and the **Fourteenth Amendment's guarantees of due process**.
9. Plaintiff seeks declaratory and injunctive relief preventing continued enforcement of the automated camera program.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction under **28 U.S.C. §1331**.
11. This Court has jurisdiction under **28 U.S.C. §1343(a)(3)** because Plaintiff seeks redress for deprivation of constitutional rights under color of state law.
12. Declaratory relief is authorized by **28 U.S.C. §§2201–2202**.
13. Venue is proper under **28 U.S.C. §1391(b)** because the events giving rise to this action occurred within this district.

## III. PARTIES

**Plaintiff**

14. Plaintiff Bradley Garrison is a resident of Harrisonburg, Virginia.
15. Plaintiff regularly drives on public roadways within the City of Harrisonburg.
16. Plaintiff frequently travels through areas monitored by the City's automated traffic enforcement cameras.
17. Plaintiff received a citation generated by the automated system.
18. Plaintiff therefore faces ongoing and future enforcement of the challenged program.

**Defendant City of Harrisonburg**

19. Defendant City of Harrisonburg is a municipal corporation organized under the laws of Virginia.
20. The City enacted and administers the automated speed-camera enforcement program.
21. The program constitutes an official municipal policy.

## Defendant Chief of Police

22. Defendant Kelley Warner is the Chief of Police for the Harrisonburg Police Department.
23. The police department reviews and authorizes citations generated by the automated system.
24. The Chief is responsible for implementing and enforcing the automated enforcement program.

## Defendant Director of Public Works

25. Defendant Thomas Hartman is the Director of Public Works.
26. Public Works coordinates placement of speed cameras within roadway work zones.

## IV. FACTUAL BACKGROUND

### A. The Automated Speed Camera Program

27. The City installed automated speed cameras in a work zone corridor on East Market Street.
28. The cameras use radar technology to measure vehicle speed.
29. The system automatically photographs vehicles exceeding the speed limit.
30. The system records license plate numbers.
31. The system automatically generates a citation notice.
32. The citation is mailed to the registered vehicle owner.

## B. Financial Incentives

33. The City's automated enforcement program generates significant revenue.
34. Tens of thousands of citations have been issued.
35. Each citation carries a civil penalty of approximately $100.
36. The program generates millions of dollars in revenue for the City.

---

## C. Presumption of Owner Liability

37. Virginia law creates a presumption that the **registered owner of a vehicle committed the violation**.
38. Owners must rebut the presumption by submitting an affidavit identifying another driver.
39. This presumption shifts the burden of proof from the government to the citizen.

---

## V. ARTICLE III STANDING

Federal courts require plaintiffs to demonstrate **standing**.

Plaintiff satisfies all three elements.

---

## Injury in Fact

40. Plaintiff has suffered a concrete injury because he received an automated traffic citation.
41. Plaintiff paid or was required to contest a monetary fine.
42. Monetary penalties constitute a concrete injury.

The Supreme Court has held that economic harm satisfies the injury requirement.

---

## Ongoing Injury

43. Plaintiff regularly travels through areas monitored by traffic cameras.
44. Plaintiff therefore faces a credible threat of future citations.

The Fourth Circuit recognizes standing where plaintiffs face a **credible threat of enforcement.**

---

## Causation

45. Plaintiff's injuries were caused directly by the City's automated enforcement program.

---

## Redressability

46. An injunction prohibiting the City from enforcing the program would prevent future injuries.

---

## VI. LEGAL FRAMEWORK

This action arises under **42 U.S.C. §1983**, which provides a cause of action against state actors who deprive individuals of constitutional rights.

Municipal liability arises under **Monell v. Department of Social Services**, which holds that municipalities may be liable for constitutional violations resulting from official policies.

---

## VII. CLAIMS FOR RELIEF

---

### COUNT I

### Fourth Amendment – Unreasonable Search

The Fourth Amendment protects citizens against unreasonable searches and seizures.

Government surveillance may constitute a search when it collects information about individuals' movements.

The Supreme Court recognized in **United States v. Jones** that prolonged monitoring of vehicle movements implicates Fourth Amendment concerns.

Similarly, **Carpenter v. United States** held that long-term tracking of individuals' movements violates reasonable expectations of privacy.

The City's automated camera program collects location and movement data from vehicles traveling through the monitored corridor.

The surveillance is conducted without a warrant.

It is conducted without individualized suspicion.

The program therefore constitutes suspicionless surveillance.

---

## COUNT II

### Procedural Due Process (Fourteenth Amendment)

The Fourteenth Amendment prohibits states from depriving individuals of property without due process.

The automated enforcement program imposes monetary fines.

Monetary penalties constitute deprivation of property.

The program presumes that the registered owner committed the violation.

The owner must disprove that presumption.

The Supreme Court has repeatedly held that **burden-shifting presumptions may violate due process when they relieve the government of proving essential elements of liability.**

The City's enforcement system therefore violates procedural due process.

---

## COUNT III

### Substantive Due Process

Substantive due process protects against arbitrary government action.

The automated camera program operates as a mass automated enforcement regime that prioritizes revenue collection.

The program subjects drivers to automated penalties without individualized law-enforcement judgment.

This system constitutes arbitrary government action.

---

## COUNT IV

### Facial and As-Applied Constitutional Challenges

Plaintiff brings both **facial and as-applied challenges** to the enforcement program.

### Facial Challenge

The statutory scheme authorizing automated speed enforcement is unconstitutional in all applications because it relies on automated surveillance and burden-shifting presumptions.

### As-Applied Challenge

Even if the statute is constitutional in some circumstances, its implementation by the City of Harrisonburg violates Plaintiff's constitutional rights.

---

## COUNT V

### Municipal Liability (Monell)

The constitutional violations described herein arise from official policies of the City of Harrisonburg.

The City enacted the ordinance authorizing automated enforcement.

The City operates and administers the program.

Under **Monell**, municipalities are liable for constitutional violations resulting from official policies.

---

## COUNT VI

**Sixth Amendment – Violation of the Confrontation Clause**

1. Plaintiff incorporates all preceding paragraphs.

2. The **Sixth Amendment** guarantees that in criminal prosecutions an accused has the right **"to be confronted with the witnesses against him."**

3. The Supreme Court held in **Crawford v. Washington** that testimonial evidence cannot be admitted against a defendant unless the witness is available for cross-examination.

4. The City's automated camera system generates photographic and electronic evidence used to establish alleged traffic violations.

5. The evidence supporting the citation consists primarily of:

   - camera-generated photographs

   - radar speed measurements

   - automated data records

   - computer-generated violation reports

6. These records are used as **substantive evidence of guilt**.

7. The individuals who created, calibrated, maintained, and interpreted this evidence—including private contractors and technicians—are **not present for cross-examination** in the initial enforcement process.

8. Instead, the City relies on machine-generated evidence and certification documents to establish liability.

9. These certifications constitute **testimonial statements** under the reasoning of **Crawford**.

10. Because the individuals responsible for producing this evidence are not subject to confrontation, the City's enforcement process violates the Sixth Amendment.

11. The violation is particularly acute because the automated enforcement system replaces traditional law-enforcement observation and testimony.

12. The City therefore deprives individuals of their constitutional right to confront the witnesses against them.

---

**COUNT VII**

**Unconstitutional Delegation of Police Power to Private Contractors**

1. Plaintiff incorporates all preceding paragraphs.

2. The City's automated traffic enforcement system relies upon private contractors to:

   - install camera equipment

   - operate automated detection systems

   - process recorded images

   - identify alleged violations

   - generate citation documentation.

3. These contractors perform core law-enforcement functions traditionally reserved to sworn government officers.

4. Private contractors operating automated enforcement systems have a **direct financial incentive** to maximize the number of citations generated.

5. In many automated enforcement systems nationwide, vendors are compensated based on the number of violations detected or citations processed.

6. Delegation of law-enforcement authority to private parties with financial incentives creates a substantial risk of biased enforcement.

7. The Constitution requires that governmental police powers be exercised by accountable public officials rather than profit-motivated private actors.

8. The City's reliance on private vendors to perform essential enforcement functions constitutes an **unconstitutional delegation of governmental authority**.

9. The delegation undermines constitutional protections by allowing private entities to initiate enforcement actions against citizens.

10. As a result, the automated enforcement system operates without adequate constitutional safeguards.

---

## COUNT VIII

**Revenue-Driven Enforcement Violating Due Process**

1. Plaintiff incorporates all preceding paragraphs.

2. The **Fourteenth Amendment** guarantees due process of law before the government may deprive individuals of property.

3. The Supreme Court has long recognized that **financial incentives in law enforcement can violate due process.**

4. In **Tumey v. Ohio**, the Court held that due process is violated when a decision-maker has a direct financial interest in imposing penalties.

5. Similarly, in **Ward v. Village of Monroeville**, the Court held that enforcement systems that generate substantial municipal revenue may violate due process when they create institutional bias.

6. The City's automated enforcement program generates significant revenue through civil penalties.

7. The financial proceeds of these penalties are directed to municipal funds and used to support city operations.

8. The City therefore has a financial incentive to maximize citation issuance.

9. Automated enforcement systems enable the City to issue **mass citations at scale** without individualized law-enforcement judgment.

10. This creates a system in which revenue generation becomes a central function of the enforcement program.

11. The combination of automated enforcement and revenue dependence creates a substantial risk of biased enforcement practices.

12. Such revenue-driven enforcement violates the constitutional requirement of neutral and impartial law enforcement.

---

## COUNT IX

### Violation of the Eighth Amendment – Excessive Fines Clause

1. Plaintiff incorporates all preceding paragraphs.

2. The **Eighth Amendment** prohibits the government from imposing excessive fines.

3. The Supreme Court held in **Timbs v. Indiana** that the Excessive Fines Clause applies to state and local governments through the Fourteenth Amendment.

4. A monetary penalty imposed by the government constitutes a "fine" when it serves at least partially punitive purposes.

5. The automated traffic camera citations issued by the City impose a civil monetary penalty on vehicle owners.

6. Although the City labels the penalty as a civil assessment, the fine serves a punitive purpose by deterring alleged speeding violations.

7. The City issues these penalties through an automated system capable of generating large numbers of citations without individualized officer discretion.

8. Because the system operates continuously and automatically, individuals may receive multiple citations within short time periods.

9. The cumulative financial penalties imposed through automated enforcement can become substantial and disproportionate to the alleged conduct.

10. The Constitution requires that monetary penalties bear a reasonable relationship to the gravity of the offense.

11. Automated citation systems risk imposing penalties that are **grossly disproportionate** to the alleged violation.

12. The City's automated enforcement program therefore risks imposing excessive fines in violation of the Eighth Amendment.

---

## COUNT X

### Dormant Commerce Clause – Burden on Interstate Commerce

1. Plaintiff incorporates all preceding paragraphs.

2. The **Commerce Clause** of Article I of the Constitution grants Congress the authority to regulate interstate commerce.

3. The Supreme Court has long recognized the **Dormant Commerce Clause**, which prohibits states and municipalities from enacting regulations that unduly burden interstate commerce.

4. In **Complete Auto Transit, Inc. v. Brady**, the Supreme Court held that state regulations affecting interstate commerce must not impose undue burdens relative to their local benefits.

5. Harrisonburg's automated enforcement program applies to all vehicles traveling through the monitored roadway corridors, including vehicles engaged in interstate travel.

6. East Market Street serves as a major corridor connecting to **Interstate 81**, which carries significant interstate traffic.

7. The automated camera system therefore subjects interstate travelers to automated surveillance and civil penalties while passing through the City.

8. The City's system may impose penalties on out-of-state drivers who lack practical ability to contest the citation in local court.

9. Automated enforcement regimes targeting heavily traveled corridors can function as **revenue-generating mechanisms directed at nonresidents and interstate travelers**.

10. Such systems risk imposing burdens on interstate commerce that exceed their legitimate local safety benefits.

11. The City's automated enforcement program therefore imposes an unconstitutional burden on interstate commerce.

---

## COUNT XI

**Ultra Vires Municipal Action Under Virginia Law**

1. Plaintiff incorporates all preceding paragraphs.

2. Municipalities in Virginia possess only those powers granted by the Commonwealth.

3.  The Supreme Court has recognized that municipalities are creatures of the state and possess limited authority. See **Hunter v. City of Pittsburgh**.

4.  Under Virginia law, local governments must act within the scope of authority delegated by the Virginia General Assembly.

5.  Virginia Code §46.2-882.1 authorizes automated speed monitoring only under limited circumstances, including specific work zones and school crossing zones.

6.  The statute imposes conditions governing the use of automated speed cameras, including requirements related to signage, calibration, and enforcement procedures.

7.  Municipalities exceeding these statutory limitations act **ultra vires**, meaning beyond their legal authority.

8.  The City of Harrisonburg's automated enforcement program exceeds or misapplies the authority granted by state law.

9.  To the extent the City operates the automated system beyond the limits authorized by the Virginia statute, the program is unlawful.

10. Enforcement of an ultra vires municipal program violates constitutional protections because it subjects individuals to penalties not authorized by law.

---

## VIII. QUALIFIED IMMUNITY DOES NOT APPLY

Defendants sued in their official capacities cannot invoke qualified immunity.

Even if qualified immunity were available, the constitutional violations alleged here arise from official municipal policy rather than discretionary decisions of individual officers.

---

## IX. REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

1.  Declare the automated traffic enforcement program unconstitutional.

2. Issue a **preliminary and permanent injunction** prohibiting enforcement of the program.
3. Award costs and attorney's fees under **42 U.S.C. §1988**.
4. Grant any additional relief the Court deems just.

---

## X. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

---

Respectfully submitted,

Bradley Garrison
PO Box 42
Harrisonburg, VA 22803
443.801.4086
brad.garrison@hotmail.com

Plaintiff, Pro Se

DATED: March 30, 2026