CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 10, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Bradley Garrison, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:26-cv-00043 |
| | ) | |
| City of Harrisonburg, Virginia, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

The City of Harrisonburg, Virginia uses automated cameras to issue citations to speeding drivers. Plaintiff Bradley Garrison alleges that this camera system violates his constitutional rights and seeks injunctive and declaratory relief against the City, the Chief of Police Joseph Tucker, the Director of Public Works Thomas Hartman, and ten unnamed John Doe defendants.

This matter is before the court on Defendants' motion to dismiss Garrison's amended complaint for lack of subject matter jurisdiction and failure to state a claim. (Dkt. 15.) For the following reasons, the court will grant Defendants' motion.

## I. Background

### A. Factual History[1]

The City of Harrisonburg installed automated speed cameras on East Market Street. (Am. Compl. ¶¶ 2, 27 (Dkt. 7).) The cameras measure the speed of passing vehicles using

[1] The following facts are taken from Garrison's complaint and are assumed to be true for the purposes of a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

radar and automatically photograph the license plates of vehicles that exceed the speed limit. (*Id.* ¶ 28–30.) A citation notice is generated automatically and mailed to the registered vehicle owner. (*Id.* ¶ 31–32.) Each citation carries a penalty of approximately $100. (*Id.* at 5 ¶ 35.) Tens of thousands of citations have been issued, generating significant revenue for the City. (*Id.* at 5 ¶¶ 33–36.)

Virginia law creates a rebuttable presumption that the registered owner of a vehicle committed the violation. (*Id.* ¶ 37.) An owner may rebut this presumption by submitting an affidavit identifying another person who was driving the vehicle at the time of the violation. (*Id.* ¶ 38.)

Plaintiff Bradley Garrison is a resident of Harrisonburg, Virginia. (*Id.* ¶ 14.) He frequently drives on public roads in Harrisonburg monitored by automated traffic enforcement cameras. (*Id.* ¶¶ 15–16, 18.) He received a citation generated by a speed camera and "was subjected to a monetary penalty." (*Id.* ¶¶ 17, 42.) Garrison "paid or was required to contest" this penalty. (*Id.* ¶ 43.)

**B. Procedural History**

Garrison filed a complaint and moved for a preliminary injunction on March 30, 2026. (Dkts. 1, 3.) On April 30, 2026, he filed an amended complaint. (Dkt. 7.) Defendants moved to dismiss for lack of standing and failure to state a claim on May 26, 2026. (Dkt. 15.) Garrison opposed on June 22, 2026, (Dkt. 19), and Defendants replied on June 29, 2026, (Dkt. 21). In light of Garrison's amended complaint, the court denied his motion for a preliminary injunction as moot on September 9, 2026. (Dkt. 25.)

## II. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant can lodge either a facial or a factual challenge to subject matter jurisdiction. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620–21, 621 n.7 (4th Cir. 2018); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial challenge asserts that a complaint fails to allege facts upon which to base subject matter jurisdiction, *see Hutton*, 892 F.3d at 621 n.7, in which case the court takes the factual allegations of the complaint as true, *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). But a factual challenge argues "that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18-cv-00290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018). In such a challenge, a district court may "regard the pleadings as mere evidence" and "consider evidence outside the pleadings." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (noting that courts may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits").

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts or the merits of a claim." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). However, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## III. Analysis

### A. Lack of Subject Matter Jurisdiction

Under Article III of the United States Constitution, a federal court may exercise subject-matter jurisdiction only over "cases" and "controversies." U.S. Const. art. III, § 2; *see*

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "Embedded in this limitation is a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61).

In a suit for injunctive or declaratory relief, the injury-in-fact element for Article III standing requires a plaintiff to "allege an injury that is concrete, particularized, and immediately threatening." *Griffin*, 912 F.3d at 653. The threatened injury must be "imminent" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (citation omitted). While imminence is "a somewhat elastic concept," a future injury needs to be "certainly impending" to provide the basis for standing. *Griffin*, 912 F.3d at 655 (citation omitted). A "conjectural or hypothetical" threat of injury is not enough. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). A plaintiff's past exposure to unlawful conduct is relevant evidence bearing on the threat of future injury, but it "does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Garrison only requests injunctive and declaratory relief. (Am. Compl. ¶¶ 9, 188.) But he has not sufficiently alleged a threatened future injury that satisfies the constitutional requirements of standing. His amended complaint does not suggest there is any "imminent" threat that he will receive a citation for a speed camera violation. He only alleges that he "frequently travels through areas monitored by the City's automated traffic enforcement cameras." (*Id.* ¶ 16.) At most, these allegations suggest that Garrison might receive a citation in the future. But they do not demonstrate that a citation is "certainly impending." *Griffin*, 912 F.3d at 655. Garrison's previous citation does not by itself establish a sufficient risk of future injury. *See Lyons*, 461 U.S. at 102–03.

Garrison alleges further that speed cameras "are subject to *potential* errors, including inaccuracies in speed measurement, misidentification of license plates, and errors in data processing." (Am. Compl. at 9 ¶ 33 (emphasis added).) In other words, Garrison says that the City's speed cameras *might* erroneously issue a citation to him. But "allegations of possible future injury are not sufficient" to convey standing. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (cleaned up). Garrison's allegation regarding potential errors is too vague and conclusory to demonstrate that an injury is "certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)(cleaned up).

Garrion lacks standing for yet another reason. As he acknowledges, the speed cameras only capture vehicles that exceed the speed limit. (Am. Compl. ¶ 29.) So, Garrison's alleged future injury (*i.e.,* being captured by a speed camera) is contingent upon unlawful conduct (*i.e.,*

speeding). When evaluating a plaintiff's risk of suffering a future injury, courts "assume that [plaintiffs] will conduct their activities within the law." *Doe v. Sutton-Wallace*, No. 3:18-cv-00041, 2019 WL 5088769, at *6 (W.D. Va. Oct. 10, 2019) (quoting *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005)). The Supreme Court has repeatedly held that Article III standing requirements are not "satisfied by general assertions or inferences that in the course of their activities [plaintiffs] will be prosecuted for violating valid criminal laws." *O'Shea*, 414 U.S. at 497; *see also Lyons*, 461 U.S. at 102–03. Because Garrison, by his own admission, must break the law to suffer his asserted injury, he lacks Article III standing for injunctive relief. *See Boger v. City of Harrisonburg*, No. 5:24-cv-00083, 2024 WL 5058013, at *4 (W.D. Va. Dec. 10, 2024).

Finally, Garrison claims another injury in fact. In his opposition brief and accompanying declaration, Garrison now alleges for the first time that he actually refused to pay or contest his speeding fine. (Pl.'s Opp. Mem. at 2 (Dkt. 19); Garrison Decl. ¶¶ 3–5 (Dkt. 19-1).) For this reason, he asserts that he faces imminent enforcement consequences, including late fees, debt collection, and a vehicle registration hold. (Garrison Decl. ¶ 5.) The problem is that Garrison stated the opposite in his amended complaint: "Plaintiff *paid or was required to contest* a monetary fine." (Am. Compl. ¶ 43 (emphasis added).) Garrison made no mention of any of these enforcement consequences in his amended complaint. The only injuries Garrison asserted in the amended complaint were the fine he that already "paid or was required to contest," and the threat of future citations. (*Id.* ¶¶ 17–21, 42–48.) "Even with the court's deference to plaintiff's pro se status, '[i]t is well-established that parties cannot amend

their complaints through briefing or oral advocacy.'" *Dublin v. Goldman Sachs*, No. 5:25-CV-00383, 2025 WL 3553197, at *3 (E.D.N.C. Dec. 11, 2025) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). If Garrison now wants to plead that he did not pay or contest his fine and faces enforcement consequences for refusing to do so, then he may only do so by amending his amended complaint.

Because Garrison has not adequately established Article III standing in his amended complaint, the court lacks subject-matter jurisdiction over this case. But even if he had sufficiently established standing, his claims would still be dismissed for failure to state a claim under Rule 12(b)(6), as explained below.

**B. Failure to State a Claim**

1. <u>Fourth Amendment</u>

Count 1 alleges that the automated traffic cameras violate Garrison's Fourth Amendment rights. (Am. Compl. ¶¶ 53–60.) But Garrison fails to state a claim under the Fourth Amendment because the use of automated cameras on public streets does not constitute a search.

To establish a Fourth Amendment violation, an individual must have a "reasonable expectation of privacy" in the area where the government has intruded. *New York v. Class*, 475 U.S. 106, 112 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "Courts have held that there is no reasonable expectation of privacy with respect to [a] vehicle's license plate number." *Darling v. Falls,* 236 F. Supp. 3d 914, 921 (M.D.N.C.

2017) (internal quotation marks omitted) (collecting cases). Because "[t]he exterior of a car . . . is thrust into the public eye, . . . to examine it does not constitute a 'search.'" *Class*, 475 U.S. at 114. "There is thus little question . . . that one does not have a reasonable expectation of privacy in the visible exterior parts of an automobile that travels the public roads and highways." *United States v. George*, 971 F.2d 1113, 1120 (4th Cir. 1992). And "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United v. Knotts*, 460 U.S. 276, 281 (1983). Therefore, Count 1 fails to state a claim under the Fourth Amendment.

2. Procedural Due Process

Counts 2 and 10 allege that the system for contesting fines violates Garrison's Fourteenth Amendment procedural due process rights. (Am. Compl. ¶¶ 61–76, 141–152.) Garrison argues that the rebuttable presumption that the registered owner of the car committed the speeding infraction violates due process and constitutes a lack of pre-deprivation process. (*Id.* ¶¶ 61–66, 72–76.) He also contends that the requirement that individuals contest their fines by submitting their defenses to a private vendor, Altumint, instead of the Clerk of Court violates due process and state law. (*Id.* ¶ 67.) Garrison further asserts that the revenue generated by traffic citations create a financial incentive for bias against him. (*Id.* ¶¶ 142–52.) He relies on *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), two cases in which Ohio mayors simultaneously sat as judges for violations of local ordinances involving fines paid to the municipality. (Am. Compl. ¶ 144–45.)

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "[P]rocedural due process requires fair notice of impending state action and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014). Furthermore, a "violation of a state law, in and of itself, does not implicate constitutional due process concerns." *J.S. ex rel. Duck v. Isle of Wight Cnty. Sch. Bd.*, 362 F. Supp. 2d 675, 684 (E.D. Va. 2005); *see also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). "To hold otherwise 'would convert every charge of a violation of state law into a due process action.'" *Proctor v. Green*, No. 3:07-cv-00045, 2008 WL 2942949, at *7 (W.D. Va. July 30, 2008) (quoting *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988)).

A monetary fine implicates a protected property interest. *E.g.*, *Shavitz v. City of High Point*, 270 F. Supp 2d 702, 709 (M.D.N.C. 2003). Garrison does not contest that he received constitutionally adequate notice of the fine. (Am. Compl. ¶ 17; Garrison Decl. ¶ 2.) Therefore, the only question is whether Garrison had an opportunity to be heard. "A procedural due process violation arises not upon the occurrence of a deprivation but rather the failure of due process in connection with the deprivation." *Snider Int'l Corp.*, 739 F.3d at 149. Garrison had an opportunity to not pay the fine and instead contest it using one of the procedures outlined by state law. *See* Va. Code. Ann. § 46.2-882.1(E) (West 2026). But he admits that he has not used the statutory procedure to contest his fine. (Pl.'s Opp. Mem. at 2; Garrison Decl. ¶¶ 3–5.) Therefore, Garrison "cannot trace any deprivation or threatened

deprivation of property to any of the adjudicative procedures . . . that he questions because he never made use of them." *Shavitz*, 270 F. Supp 2d at 710 (internal quotations omitted). "Plaintiff, by ignoring all process available to him and instead proceeding directly to bringing this action, 'made no effort to bring into play' the available process and therefore cannot claim such process was inadequate." *Id.* at 711 n.9 (quoting *Van Harken v. City of Chicago*, 906 F. Supp. 1182, 1187 n.5 (N.D. Ill. 1995)). Thus, Garrion has either suffered no deprivation of property, since he has apparently not paid his fine, or he is not imminently threatened by the allegedly constitutionally inadequate procedure that he refuses to use. *Cf. Mora v. City of Gaithersburg*, 519, F.3d 216, 230 (4th Cir. 2008) ("[Plaintiff] has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.")

Even assuming Garrison had standing to challenge the adequacy of the procedure for contesting the fines, the procedural safeguards provided here satisfy the constitutional minimum under *Mathews v. Eldrige*, 424 U.S. 319 (1976). The *Mathews* test requires courts to balance the (1) private interest at stake against (2) the risk of erroneous deprivation of the interest and the value of additional procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens of additional process. *Id.* at 335. Here, the private interest at stake is a fine that is no more than $100. Va. Code. Ann. § 46.2-882.1(C) (West 2026). Failure to pay the fine results in no criminal consequences. *Id.* § 46.2-882.1(F),(G). Garrison has not alleged facts demonstrating any significant risk of erroneous deprivation, nor proposed any specific additional safeguards that would lower this risk. And

given the procedures already established by state law to contest the fines, "[i]t is difficult to see how additional process could significantly reduce the chance of erroneous deprivation." *Snider Int'l Corp.*, 739 F.3d at 149. Nor would the benefit of additional process outweigh the additional costs of administration, given the amount of money at stake in this case. *Cf. Van Harken v. City of Chicago*, 103 F.3d 1346, 1353 (7th Cir. 1997) ("[T]he maximum penalty that they are empowered to impose is only $100. The less that is at stake, other things being equal, the less process is due; that is the teaching of *Mathews*.")

The City's use of a private vendor to process citations, allegedly in violation of state law, also does not implicate federal due process. First, Virginia law both expressly authorizes the use of private vendors for "consulting, operations, and administration" services related to automated speed monitoring and prohibits municipalities from compensating private vendors based on "the number of violations paid or monetary penalties imposed." Va. Code Ann. § 46.2-882.1(H) (West 2026). And the money from the fines is paid to the locality, not the private vendor. *Id.* § 46.2-882.1(C). Regardless, even if this arrangement somehow contravened Virginia law, a violation of state law is not *per se* a violation of federal due process. *See Riccio*, 907 F.2d at 1469. Nor do federal courts have general authority to enjoin municipalities to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (Eleventh Amendment sovereign immunity bars suits against states for injunctive relief on the basis of state law, rather than federal law).

Finally, Garrison's arguments relying on *Tumey* and *Ward* are inapposite. In *Tumey*, the mayor sat as a judge and directly received a portion of the fines he imposed on defendants.

273 U.S. at 531–32. In *Ward*, the mayor similarly sat as a judge and the revenue from his court produced a substantial portion of the budget of the village. 409 U.S. at 58–59. Neither precedent is applicable in this case. Garrison only alleges that the City of Harrisonburg, in general, has an interest in generating more revenue by issuing more citations. (Am. Compl. ¶¶ 146–52.) But the City as an entity is not the decision maker when it comes to contested traffic fines. Instead, disputes over the validity of fines are adjudicated based on affidavits submitted to the clerk of the General District Court or testimony in open court in front of a judge. Va. Code Ann. § 46.2-882.1(E) (West 2026). Garrison does not allege that the actual decision maker, whether it be the judge or clerk of the General District Court, has a direct pecuniary interest in his fine. After all, under state law, the fines are paid to the City and not a private vendor, the clerk of court, or the General District Court judge. *Id.* § 46.2-882.1(C). And the fact that judges and clerks work for the government alone is insufficient to establish bias violating due process. "[T]o be biased by the government's financial interests, the Supreme Court has held that the judge must have some executive responsibility over its finances that may tempt him or her to forsake impartiality." *Brucker v. City of Doraville*, 38 F.4th 876, 882 (11th Cir. 2022). Garrison has made no such allegation in his amended complaint. *See Dugan v. Ohio*, 277 U.S. 61, 65 (1928) ("While it is true that [the mayor/judge's] salary is paid out of a fund to which fines accumulated from his court under all laws contribute, it is a general fund, and he receives a salary in any event, whether he convicts or acquits.") Counts 2 and 10 fail to state a claim.

3. Substantive Due Process

Count 3 alleges a violation of Garrison's Fourteenth Amendment substantive due process rights. (Am. Compl. ¶¶ 77–81.) The Fourth Circuit has "held that substantive due process violations 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Mora*, 519 F.3d at 230 (quoting *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir.1991)). Here, the state has provided Garrison with multiple pathways to correct any erroneous tickets: he may mail an affidavit affirming that he was not driving the vehicle at the time of the speeding violation and identifying the actual driver, or he may testify so in open court before a judge. Va. Code. Ann. § 46.2-882.1(E). "Thus [Garrison]'s substantive due process claim fails for much the same reason his procedural one did: [Virginia]'s treatment of him is hardly arbitrary when the state has given him the means to correct the errors he alleges." *Mora*, 519 F.3d at 231. Count 3 fails to state a claim.

4. Dormant Commerce Clause

Counts 4 and 12 alleges violations of the Dormant Commerce Clause. (Am. Compl. ¶¶ 82–84, 166–75.) The Dormant Commerce Clause prohibits states from discriminating against out-of-state economic interests or imposing clearly excessive burdens on interstate commerce. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

To begin, Garrison lacks standing to bring a Dormant Commerce Clause challenge because he is a resident of Harrisonburg, Virgina. (Am. Compl. ¶ 14.) He is not an out-of-state resident. (*Id.*) To the extent that Garrison alleges that the automated camera system discriminates against or disproportionately burdens out-of-state residents or interstate travelers, that is no injury to him. (*Id.* ¶¶ 83, 171–72.) Garrison "may not claim standing . . . to vindicate the constitutional rights of some third party." *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 606 (4th Cir. 2012) (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)).

Even if Garrison had standing to bring such a claim, the City's automated traffic cameras do not facially discriminate based on state residency because they photograph all speeding cars, regardless of the driver's state of residence or citizenship. And Garrison has not sufficiently alleged that the potential burden on interstate commerce is clearly excessive relative to the benefits to local safety. "[R]egulations that touch upon safety—especially highway safety—are those that the Court has been most reluctant to invalidate" under the Dormant Commerce Clause. *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (plurality opinion) (internal quotations omitted). The incidental burden that may fall on interstate travelers who speed near a highway ramp does not overcome the "strong presumption of validity" accorded to traffic safety regulations, a traditional area of local concern. *Id.* (internal quotation marks omitted). Therefore, Counts 4 and 12 fail to state a claim.

5. Separation of Powers

Count 5 alleges violations of the separation of powers under the Virginia Constitution. (Am. Compl. ¶¶ 85–107.) Some of the allegations appear to be repeated from other sections and also allege violations of federal due process and private nondelegation. (*See, e.g.*, *id.* ¶¶ 93, 102.) To the extent that the City's use of Altumint violates the Virginia Constitution, the court lacks jurisdiction to consider such a claim under 42 U.S.C. § 1983 because federal courts do not have general authority to demand that state officers follow state law. *Pennhurst*, 465 U.S. at 104, 106. And federal separation of powers is not implicated in this case, which exclusively involves municipal entities operating under state law.

6. Facial and As-Applied Challenges

Count 6 does not appear to articulate a cause of action at all. Instead, it simply states that Garrison is bringing both facial and as-applied constitutional challenges. (Am. Compl. ¶¶ 108–10.) Therefore, Count 6 fails to state a claim for relief.

7. *Monell* Liability

Count 7 alleges a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Am. Compl. ¶¶ 111–18.) *Monell* supplies the framework for municipal liability under 42 U.S.C. § 1983 when a local government's policy or custom violates a plaintiff's federal constitutional rights. 436 U.S. at 694. But Garrison has not plausibly alleged any claims under the federal Constitution in his amended complaint. Therefore, the court need not reach whether the City would be liable under the *Monell* framework. Count 7 fails to state a claim.

8. Sixth Amendment Confrontation Clause

Count 8 alleges that the automated traffic cameras violate Garrison's Sixth Amendment Confrontation Clause rights. (Am. Compl. ¶¶ 120–30.) The Confrontation Clause guarantees that defendants in criminal prosecutions have a right to confront the witnesses against them. U.S. Const. amend. VI. However, this right does not apply to civil proceedings. *United States v. Seward*, 135 F.4th 161, 166 (4th Cir. 2025).

Garrison's traffic fine is a civil penalty. The statute at issue provides that the operator of a vehicle that a camera captures speeding in certain zones is liable for a "civil penalty" up to $100. Va. Code. Ann. § 46.2-882.1(C). The imposition of this penalty is not deemed a conviction, nor made a part of the owner's driving record, nor used for insurance purposes, nor will Garrison be held in contempt or arrested for failure to appear in response to a summons. *Id.* § 46.2-882.1(F), (G)(2). Thus, Garrison's traffic ticket and related fine bear none of the characteristics of criminal prosecution and are civil in nature. *Cf. City of Fairfax v. Cooper*, 99 Va. Cir. 334, 2018 WL 8261343, at *6 (Va. Cir. Ct. July 10, 2018); *see also Shavitz*, 270 F. Supp. 2d at 713–16 (fines for automated red-light camera infractions were civil and not criminal). For this reason, the Sixth Amendment Confrontation Clause is not applicable and Count 8 fails to state a claim.

9. "Unconstitutional Delegation of Police Power to Private Contractors"

Count 9 alleges that the City's use of a private vendor to manage its automated traffic enforcement is an unconstitutional delegation of governmental power to a private entity. (Am. Compl. ¶¶ 132–40.) It is unclear whether Garrison alleges a violation of the federal

Constitution or the Virginia Constitution. Either way, Count 9 fails to state a claim. This case does not involve any delegation of power by the federal government, so the federal Constitution is inapplicable. And as previously stated, federal courts have no general authority to order municipalities to comply with a state constitution. *Pennhurst*, 465 U.S. at 104, 106.

10. Eighth Amendment Excessive Fines Clause

Count 11 alleges a violation of the Eighth Amendment's Excessive Fines Clause. Civil fines that are designed at least in part to punish are subject to the Excessive Fines Clause. *Korangy v. FDA*, 498 F.3d 272, 277 (4th Cir. 2007). "[C]ourts must examine the proportionality between the fine and the gravity of the associated offense in order to determine whether it is constitutionally excessive." *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 808 (D. Md. 2008) (citing *United States v. Bajakajian*, 524 U.S. 321, 333–34 (1998)). Courts should be mindful both that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Bajakajian*, 524 U.S. at 336. As such, a court should uphold a civil fine unless it is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 337.

The court finds that the civil penalty is designed at least in part to punish the offense of speeding. But the fine imposed (up to $100) is not grossly disproportional to the offense. Garrison's only argument to the contrary is that "individuals may receive multiple citations within short time periods" and hence the "cumulative financial penalties" could become "substantial and disproportionate." (Am. Compl. ¶¶ 160–61.) This, of course, is the definition

of proportional punishment. If drivers are caught speeding multiple times, they will face a fine for each instance of speeding. Accordingly, Count 11 fails to state a claim.

11. *Ultra Vires* Municipal Action Under Virginia Law

Count 13 alleges that the City acted *ultra vires* by exceeding the scope of its authority under Virginia law. (Am. Compl. ¶¶ 177–85.) As stated above, federal courts do not have general authority to enforce state laws or enjoin state officers to comply with state laws. *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 151 n.2 (4th Cir. 2024). Such suits are barred by state sovereign immunity under the Eleventh Amendment. *Pennhurst*, 465 U.S. at 106. And § 1983's cause of action only extends to violations of the federal Constitution or federal law by state actors. 42 U.S.C. § 1983. Garrison does not identify another cause of action or waiver of sovereign immunity that would allow the court to enforce *state* law against a municipality. Therefore, Count 13 fails to state a claim.

12. Redundant Defendants

Garrison names the Harrisonburg Chief of Police, Joseph Tucker, and Director of Public Works, Thomas Hartman, as defendants in their official capacities. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Defendants argue that suing Tucker and Hartman in their official capacities is redundant because Garrison is already suing the City of Harrisonburg, their employer. (Defs.' Supp. Mem at 5–6.) Garrison does not appear to dispute that suing Tucker and Hartman in their official capacities is "structurally identical" to

suing the municipality itself. (Pl.'s Opp. Mem. at 5.) The court agrees that Tucker and Hartman are redundant defendants when named in their official capacities.

Furthermore, though Garrison's amended complaint names "JOHN DOES 1-10" as defendants in the case caption, he does not list them as defendants in the "Parties" section of his complaint, (Am. Compl. ¶¶ 14–26), nor are they ever mentioned anywhere in the body of the complaint. At no point does Garrison appear to state any claims against any John Doe throughout his complaint. "Unless it appears that John is an actual person whose identi[ty] and address is identifiable, the Court may dismiss claims against John Doe." *Studco Bldg. Sys. U.S., LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560, 567 (E.D. Va. 2020).

## IV. Conclusion

For the reasons stated, the court will **GRANT** Defendants' motion to dismiss the amended complaint. (Dkt. 15.) Garrison's amended complaint is **DISMISSED without prejudice**.

An appropriate Order will issue.

**ENTERED** this 10th day of November, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE